**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 20-12-DLB**

**BILLY LEMASTER, et al.**                                                                                          **PLAINTIFFS**

**v.**                                    **MEMORANDUM OPINION AND ORDER**

**LAWRENCE COUNTY, KENTUCKY, et al.**                                                          **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    This matter is before the Court on Defendants' Motion for Judgment on the Pleadings. (Doc. # 11). The Motion has been fully briefed, (Docs. # 14 and 36), and is now ripe for the Court's review. For the reasons stated herein, Defendants' Motion is **granted**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiffs Billy Lemaster and Amanda Lemaster, owners and operators of Lemaster Towing and Recovery ("Lemaster Towing"), bring this action against Lawrence County, Kentucky and Phillip L. Carter, both in his individual capacity and official capacity as Lawrence County Judge Executive. (Doc. # 1 at 1). Lawrence County maintains a list of towing companies that it utilizes on a rotating basis to cover emergency towing needs. (*Id.* at ¶¶ 1-3). Plaintiffs allege that Defendant Carter removed Lemaster Towing from the County's towing service call list in retaliation for a Facebook post Billy Lemaster made that reflected poorly on Judge Carter. (*Id.* at ¶¶ 11, 28, 37).

In January 2019, Plaintiffs expressed concerns to Judge Carter that Lemaster Towing was receiving "very little" or no calls pursuant to the County tow call list. (*Id.* at ¶¶ 8, 9). In response, Judge Carter indicated that he would investigate the situation and ensure that Plaintiffs began receiving more calls. (*Id.* at ¶ 10). Then, in April of 2019, Billy Lemaster made a post on Facebook criticizing the County's recent firing of an emergency-services employee. (*Id.* at ¶ 11). Judge Carter allegedly contacted Billy Lemaster and requested that he remove the post, as it reflected poorly on Defendant as County Judge Executive. (*Id.* at ¶ 12). According to the Complaint, Billy Lemaster agreed to remove the post, and, in exchange, Judge Carter agreed to ensure Plaintiffs began receiving more towing calls. (*Id.* at ¶¶ 13-14). Plaintiffs received a "steady volume" of calls during the summer of 2019. (*Id.* at ¶ 16).

However, in early September 2019, Judge Carter allegedly instructed Lawrence County Emergency Management ("Dispatch") not to call Lemaster Towing, specifically "directing the dispatch caller to skip Lemaster Towing and call the next company on the list." (*Id.* at ¶ 28). In addition, Judge Carter allegedly instructed Dispatch not to call the Cherryville Fire and Rescue Department, which Billy Lemaster headed at the time. (*Id.* at ¶¶ 17-18). The Complaint further alleges that Judge Carter called the Kentucky Fire Commission to request an audit of the Cherryville Fire and Rescue Department, (*id.* at ¶¶ 21-23), and contacted the state police to request an inspection of the Cherryville Fire Department's premises, (*id.* at ¶¶ 24-25).

In September 2019, following Judge Carter's alleged interference with the tow call list and the Cherryville Fire Department, Plaintiffs experienced a "sudden drop" in the number of towing calls made to Lemaster Towing via operation of the rotating service call

2

list. (*Id.* at ¶¶ 27-28). As of the filing of the Complaint on February 7, 2020, Plaintiffs were allegedly continuing to receive an average of zero to one towing calls per month, down from their typical rate of five to six calls per month. (*Id.* at ¶¶ 29-30). Based on these facts, Plaintiffs' Complaint sets forth a First Amendment retaliation claim under 42 U.S.C. § 1983 (Count I), a claim of retaliation under the Kentucky Civil Rights Act ("KCRA"), KRS § 344, *et seq*. and/or the Kentucky Constitution (Count II), and a state-law claim of tortious interference with economic relations (Count III). (*Id.* at ¶¶ 33-58). Plaintiffs seek compensatory and punitive damages, as well as attorney's fees. (*Id.* at 8-9).

In their Motion for Judgment on the Pleadings, presently before the Court, Defendants seek dismissal of all Plaintiffs' claims against Phillip Carter in his official capacity as redundant of the claims against Lawrence County. (Doc. # 11 at 5-6). Defendants also seek dismissal of Count II brought pursuant to the KCRA and/or Kentucky Constitution for failure to state a claim. (*Id.* at 6-7). Further, Defendants have moved to dismiss Plaintiffs' tortious-interference claim under Count III as to Phillip Carter in his official capacity and Lawrence County on the basis of sovereign immunity. (*Id.* at 7).

II. ANALYSIS

A. Standard of Review

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Thus, in order to survive a Rule 12(c) motion, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint does not have to show that liability is probable but must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering whether a complaint has adequately pled a claim for relief, the Court accepts all allegations in the complaint as true and considers them in the light most favorable to the plaintiff.  *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570).  The Court need not, however, "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting in parenthetical *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Merely stating the elements of a claim is insufficient; while "legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 678.  In sum, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

### B. Official Capacity Claims against Judge Carter

Defendants first move to dismiss Plaintiffs' claims against Phillip Carter in his official capacity as Lawrence County Judge Executive. (Doc. # 11 at 5). Defendants specifically argue that the official-capacity claims against Judge Carter are redundant of the claims against Lawrence County, because a claim against a government official in his official capacity is essentially a claim against the government entity itself. (*Id.*). The Court agrees.

The Supreme Court has recognized that "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Shorts v. Bartholomew*, 255 F. App'x 46, 49 n.4 (6th Cir. 2007) ("Official-capacity suits are, for all intents and purposes, treated as suits against the municipality . . . .") (citing *Hafer*, 502 U.S. at 25). Thus, when a plaintiff names both the municipality and agent of the municipality in his official capacity, the official-capacity claim is redundant and should be dismissed. *See Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) (finding official-capacity claim properly dismissed as "superfluous" where complaint also named municipality as defendant). Unsurprisingly, district courts in the Sixth Circuit "regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit." *Johnson v. Washington Cnty. Career Ctr.*, No. 2:10-cv-76, 2010 WL 2570929, at *4 (S.D. Ohio June 22, 2010); *accord Gilley v. Bd. of Educ. of Trimble Cnty., Ky.*, No. 3:12-40, 2013 WL 3154130, at *8 (E.D. Ky. June 19, 2013) (collecting cases).

As is relevant to Plaintiffs' state-law claims against Judge Carter in his official capacity, the same principle applies under Kentucky law.  *See Commonwealth Bd. of Claims v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001) (finding official-capacity claims against jailer to be "in essence" claims against the county) (citing *Graham*, 473 U.S. at 165-66); *see also Yates v. Benningfield*, No. 2012-CA-154, 2013 WL 781098, at *2 (Ky. Ct. App. Mar. 1, 2013) (finding official-capacity claims against jailer and judge executive to be "essentially claims against the county").

In this case, Plaintiffs bring damages claims against Lawrence County, Kentucky and Phillip Carter, both in his official capacity as County Judge Executive and in his individual capacity.  (Doc. # 1 at 1).  Because the official-capacity claims against Defendant Carter are, in practical terms, claims against Lawrence County, Plaintiffs' official-capacity claims are dismissed as superfluous.  *See Faith Baptist Church*, 522 F. App'x at 327; *Yates*, 2013 WL 781098, at *2.

**C.    Claims under the KCRA and/or the Kentucky Constitution**

Next, Defendants argue that Plaintiffs have failed to state a claim under either the Kentucky Civil Rights Act ("KCRA") or the Kentucky Constitution.  (Doc. # 11 at 6-7). Under Count II of the Complaint, Plaintiffs allege that Billy Lemaster was engaging in constitutionally protected speech when he posted a message on Facebook that was critical of the County, and that Judge Carter retaliated against Plaintiffs for exercising their civil rights by interfering with the tow call list in an effort to deter them from "expressing public criticisms about the County and its officials."  (Doc. # 1 at ¶¶ 45, 47-50).  Count II is entitled "Violation of Kentucky's Civil Rights Act, KRS § 344, et seq.," while the paragraphs set forth below somewhat confusingly reference the First Amendment and

Kentucky Constitution—not the KCRA.  (*Id.* at 6-7).  The Court construes Count II as alleging claims under both the KCRA and the Kentucky Constitution.  This is in light of the inclusion of "Kentucky Civil Rights Act" in the header of Count II and references to Plaintiffs' "state civil rights" in the paragraphs thereunder, as well as Plaintiffs' reference to the Kentucky Constitution.  (*Id.*).  However, the Court agrees with Defendants that Plaintiffs have failed to adequately state a claim for relief under either the KCRA or the Kentucky Constitution.

Defendants first assert that Plaintiffs' KCRA claim fails as a matter of law because the KCRA "does not contain a provision recognizing a cause of action for free speech retaliation pursuant to [the Kentucky Constitution]."  (Doc. # 11 at 6).  The Court understands Defendants to, more fundamentally, be asserting that a retaliation claim based on the exercise of constitutionally protected speech does not fall within the scope of the KCRA.  As Defendants note, the general purpose of the Act is "[t]o safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age . . . or . . . disability . . . ."  KRS § 344.020(1)(b).  An additional purpose of the Act is "[t]o provide for execution within the state of the policies embodied in" certain federal civil rights and anti-discrimination statutes, including the Civil Rights Act of 1964, the Fair Housing Act, and the Americans with Disabilities Act.  *Id.* § 344.020(1)(a)

Plaintiffs have not alleged discrimination or retaliation based upon any of the criteria listed in the statute (race, religion, sex, etc.).  Nor have Plaintiffs alleged retaliation based upon a policy "embodied in" a federal statute that has been incorporated by the KCRA under § 344.020(1)(a).  In other words, Plaintiffs' claim that Judge Carter and

Lawrence County retaliated against them for exercising their right to free speech simply does not fall within the scope of the KRCA.  Moreover, in their response brief, Plaintiffs do not confront this shortcoming and merely ask the Court to construe the KCRA liberally. (Doc. # 14 at 7) (citing *Commonwealth v. Pendennis Club, Inc.*, 153 S.W.3d 784 (Ky. 2004)).  However, even giving the KCRA the liberal construction it is owed, Plaintiffs have not stated a plausible violation of the Act.[1]  Thus, Plaintiffs' KCRA claim under Count II is dismissed.

Defendants also correctly assert that Plaintiffs' state constitutional claim fails as a matter of law because Plaintiffs have not identified a private right of action for damages based on violations of the Kentucky Constitution.  (Doc. # 11 at 7) (citing *St. Luke Hosp. v. Straub*, 354 S.W.3d 529, 534-37 (Ky. 2011) (holding that KRS § 446.070 is not analogous to 42 U.S.C. § 1983 and does not allow damages claims based on violations of the Kentucky Constitution); *see also Crosby v. Univ. of Ky.*, 863 F.3d 545, 558 (6th Cir. 2017) (holding that Kentucky law does not provide a cause of action for damages claims based on violations of due process protections in §§ 1 and 2 of the Kentucky Constitution). Here, Plaintiffs seek only money damages based on Defendants' alleged violation of the Kentucky Constitution, (*see* Doc. # 1 at 8-9), and there is no authority supporting such relief under state law, *St. Luke Hosp.*, 354 S.W.3d at 534-37.  Accordingly, Plaintiffs' claim based on the Kentucky Constitution alleged under Count II is dismissed.[2]

---

[1]  Having concluded that Plaintiffs have failed to state a claim under the KCRA, the Court need not address Defendants' alternative argument that Plaintiffs' KCRA claim fails as a matter of law because the Act only protects against discrimination in certain contexts that do not apply here—employment, housing, public accommodation, and credit transactions.  (*See* Doc. # 11 at 6).

[2]  Plaintiffs also argue that the Court should not dismiss their KCRA and Kentucky Constitution claims because they have not yet had an opportunity to develop these claims in

### D. Tortious-Interference Claim against Lawrence County

Finally, Defendants seek dismissal of Plaintiffs' tortious-interference claim, set forth in Count III of the Complaint, as alleged against Defendant Lawrence County. (Doc. # 11 at 7). Defendants more specifically argue that Lawrence County is entitled to sovereign immunity.[3] (*Id.*). "When assessing whether defendants are entitled to immunity from state law tort liability, the court must apply Kentucky rules of sovereign immunity." *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 656 (W.D. Ky. 2019) (quoting *Ivey v. McCreary Cnty. Fiscal Court*, 939 F. Supp. 2d 762, 765 (E.D. Ky. 2013)). Under Kentucky law, counties are "cloaked with sovereign immunity," *Schwindel v. Meade Cnty., Ky.*, 113 S.W.3d 159, 163 (Ky. 2003), meaning they are "absolutely immune from suit unless the state has given its consent or otherwise waived its immunity," *N. Ky. Water Dist. v. Carucci*, 600 S.W.3d 240, 243 (Ky. 2019) (citing *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004)). As Plaintiffs fail to identify a waiver of immunity by the Commonwealth for tortious-interference claims, Lawrence County is entitled to sovereign immunity. Consequently, Count III of the Complaint is dismissed with respect to Defendant Lawrence County, Kentucky.[4]

---

discovery. (Doc. # 14 at 7). However, it is well established that a plaintiff is not entitled to discovery before a motion to dismiss (or a motion for judgment on the pleadings, to which the same standard applies), in order to "protect defendants from expending resources on costly discovery for cases that will not survive summary judgment." *Kolley v. Adult Prot. Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) (citing *Twombly*, 550 U.S. at 558-59).

[3]     Defendants also seek dismissal of the official-capacity claim against Defendant Carter on the basis of sovereign immunity. Yet, all official-capacity claims against Judge Carter have been dismissed as redundant of the claims against Lawrence County. *See supra* Part II.B. The Court, therefore, need not address whether Defendant Carter, in his official capacity, would be entitled to sovereign immunity with respect to Plaintiffs' tortious-interference claim.

[4]     Plaintiffs point to the Supreme Court of Kentucky's statement in *Yanero v. Davis* that it is not the case that "a public officer or employee is *always* immune from tort liability for negligent or otherwise wrongful conduct in the performance of his/her official duties." (*See* Doc. # 14 at 6)

III.   **CONCLUSION**

Accordingly, for the reasons set forth herein, **IT IS ORDERED** that:

(1)   Defendants' Motion for Judgment on the Pleadings (Doc. # 11) is **GRANTED**;

   (a)   Plaintiffs' official-capacity claims against Defendant Phillip Carter are **dismissed with prejudice**;

   (b)   Count II is **dismissed with prejudice**; and

   (c)   Count III is **dismissed with prejudice** with respect to Defendant Lawrence County, Kentucky.

(2)   This matter shall otherwise proceed on the remaining claims in accordance with the Court's Scheduling Order (Doc. # 9).

This 21st day of October, 2020.



Signed By:
David L. Bunning    DB
United States District Judge

J:\DATA\ORDERS\Ashland Civil\2020\20-12 Order on MJOP.docx

---

(quoting *Yanero*, 65 S.W.3d 510, 523 (Ky. 2001)).  However, the quoted passage in *Yanero* relates to the potential for qualified immunity for officials sued in their individual capacity. *Yanero*, 65 S.W.3d at 521.  Defendants do not challenge Count III as alleged against Defendant Carter in his individual capacity at this time, and as noted above, the official-capacity claims against Judge Carter have been dismissed as redundant.  Accordingly, Plaintiffs' reliance on *Yanero* is misplaced.

   Plaintiffs' additional argument concerning the need for discovery to assess whether Defendants' conduct constituted a "government function" is similarly misguided.  (*See* Doc. # 14 at 6) (citing *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009)).  This is not a case involving a governmental agency, such as a board of education, where the court would be required to examine whether the acts giving rise to liability constitute government functions for purposes of assessing immunity.  *See Schwindel*, 113 S.W.3d at 165-68 (analyzing separately immunity of county and board of education and noting that the latter could be "sued for damages for the tortious performance of a proprietary function but not a governmental function").