**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 20-12-DLB**

**BILLY LEMASTER, et al.**                                                             **PLAINTIFFS**


**v.**                              **MEMORANDUM OPINION AND ORDER**


**LAWRENCE COUNTY, KENTUCKY, et al.**                             **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiffs' Renewed Motion for Preliminary Injunction. (Doc. # 44). The Motion has been fully briefed, (Docs. # 46 and # 48), and is now ripe for the Court's review. For the reasons stated herein, Plaintiffs' Motion is **denied**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Billy Lemaster and Amanda Lemaster, owners and operators of Lemaster Towing and Recovery ("Lemaster Towing"), bring this action against Lawrence County, Kentucky and the Lawrence County Judge Executive, Phillip L. Carter, in his individual capacity.[1] (Doc. # 1 at 1). Lawrence County maintains a list of towing companies that it utilizes on a rotating basis to cover emergency towing needs that arise in the County. (*Id.* at ¶¶ 1-3). Plaintiffs allege in their Complaint that Defendant Carter removed Lemaster Towing from the County's towing service call list in retaliation for a Facebook post Billy

---

[1]      The Court dismissed Plaintiffs' official-capacity claims against Judge Carter in a Memorandum Opinion and Order granting Defendants' Motion for Judgment on the Pleadings. (Doc. # 40).

1

Lemaster made in April of 2019 criticizing the recent firing of a County employee, which reflected poorly on Judge Carter. (*Id.* at ¶¶ 11, 28, 37).

Plaintiffs filed an earlier Motion for Preliminary Injunction on May 29, 2020 based on their claim that Defendants retaliated against them for exercising their First Amendment right to free speech. (Doc. # 19). The Court denied that Motion on August 31, 2020, as Plaintiffs had failed to demonstrate either a strong likelihood of success on the merits or irreparable injury. (Doc. # 36). More specifically, Plaintiffs had failed to show that Judge Carter's alleged interference with the towing service call list was motivated at least in part by Plaintiffs' protected speech, i.e., the April 2019 Facebook post. (*Id.* at 8-11). The Court reasoned that the causal connection between Plaintiffs' speech and the adverse action was strained because Plaintiffs had not begun experiencing a drop in towing calls until September of 2019, more than four months after the Facebook post. (*Id.* at 11). In addition to this gap of time, during the intervening summer of 2019, Plaintiffs acknowledged receiving a "steady volume" of calls. (*Id.* at 2, 12). For the same reasons, the Court found that Plaintiffs had failed to demonstrate that they would suffer irreparable injury in the form of future retaliation absent a preliminary injunction. (*Id.* at 14-15).

Plaintiffs have now filed a Renewed Motion for Preliminary Injunction relying upon evidence uncovered in the discovery process, namely two additional Facebook posts made closer in time to the perceived retaliation, which Plaintiffs believe demonstrate causation between Plaintiffs' speech and Judge Carter's adverse action. (Doc. # 44). The Court will first briefly summarize the existing evidence for context and then will discuss Plaintiffs' newly presented evidence.

In April 2019, Billy Lemaster made a Facebook post criticizing the County's recent firing of an emergency services employee. (Doc. # 1 at ¶ 11). This Facebook post was deleted, and thus, the contents of the post are unclear. (Doc. # 19 at 3 n.1). However, it can be inferred that in the post, Billy Lemaster criticized the County's decision to fire a certain employee and expressed his opinion that the replacement employee was "not doing his job." (Doc. # 19-1). Judge Carter allegedly contacted Billy Lemaster asking him to remove the post. (Doc. # 1 at ¶ 12). Billy Lemaster agreed to delete the post and, in exchange, Judge Carter agreed to ensure Plaintiffs began receiving more towing calls (which Plaintiffs previously complained of as being unusually low). (*Id.* at ¶¶ 8-9, 13-14). In the ensuing summer of 2019, Plaintiffs received a "steady volume" of calls. (*Id.* at ¶ 16).

Then, in September 2019, Judge Carter allegedly instructed Lawrence County Emergency Management ("Dispatch") to stop calling Lemaster Towing, "directing the dispatch caller to skip Lemaster Towing and call the next company on the list." (*Id.* at ¶ 28). An email to that effect was sent on September 3, 2019 stating, "PER JUDGE CARTER . . . LEMASTER TOWING IS NO LONGER ON THE ROTATION LIST." (Doc. # 19-5). That same email also stated that the Cherryville Fire Department, which Billy Lemaster headed at the time, should no longer be dispatched. (Docs. # 1 at ¶¶ 17-18 and 19-5). Billy Lemaster called Judge Carter on September 7, 2019 to confront him about removing Lemaster Towing from the call list. (Doc. # 19-6 at 1). Judge Carter denied having told Dispatch not to call Lemaster Towing. (*Id.*). That same day, a second email was sent stating, "PER JUDGE CARTER[] [THE CHERRYVILLE FIRE DEPARTMENT] IS STILL TO BE DISPATCHED IF THEY DO NOT [RESPOND] THEN

3

DISPATCH ST3, ST1/ST2, OR INEZ."  (Doc. # 19-7).  Yet, that second email did not mention Lemaster Towing and did not reinstate Lemaster on the rotation list.

Plaintiffs allege that beginning in September 2019, they experienced a "sudden drop" in the number of towing calls made to Lemaster Towing via operation of the rotating service call list.  (Doc. # 1 at ¶ 27).  Plaintiffs allege that this drop in calls resulted from Judge Carter's directing Dispatch to remove them from the list in retaliation for the critical April 2019 Facebook post.  (*Id.* at ¶¶ 37-39).  As evidence of further interference with the list, on May 2, 2020, Billy Lemaster heard a Lawrence County dispatcher relay over the radio that there were no available tow trucks despite the fact that Dispatch had not called Lemaster Towing.  (Doc. # 19-12).  When Billy Lemaster called the dispatcher and asked why Lemaster Towing had been called, the dispatcher stated, "you're gonna have to talk to the judge about that."  (*Id.*).

In their Renewed Motion, Plaintiffs describe a misunderstanding that occurred between Plaintiffs and Judge Carter during the summer of 2019 regarding Plaintiffs' attempt to get reimbursed by the County for work done on a vehicle used by the Cherryville Fire Department.  (Doc. # 44 at 2) (citing Docs. # 41-1 at 25-26 and 42-1 at 89-90, 142).  According to Plaintiffs, Judge Carter did not know the vehicle was owned by the Fire Department, which led him to mistakenly believe that the Lemasters were attempting to misuse public funds.  (*Id.*) (citing Doc. # 42-1 at 89-90).  Plaintiffs allege that based on his mistaken belief, Judge Carter called the state police to investigate the Lemasters and began a smear campaign against them with the help of a former campaign supporter, Wilma McKenzie.  (*Id.*) (citing Docs. # 41-1 at 24-25 and 42-1 at 87).

4

This led Billy Lemaster to make a second negative Facebook post about Judge Carter on August 29, 2019.  (Doc. # 44 at 2-3).  That Facebook post stated in large lettering, "Is Phillip L. Carter and Wilma McKenzie a couple now? Asking for a friend[.]" (Doc. # 44-1).  Thus, Plaintiffs now allege that it was this Facebook post that caused Judge Carter to direct Dispatch to stop calling Lemaster Towing, as evidenced by the September 3, 2019 email sent shortly thereafter stating that Lemaster was no longer on the call list.  (Doc. # 44 at 3).

Plaintiffs further allege that Judge Carter, in an attempt to defund the Cherryville Fire Department, called a building inspector to inspect the Fire Department who determined that any repairs to the Department should be stopped.  (Doc. # 44 at 4) (citing Docs. # 41-1 at 35-36).  Plaintiffs explain that they had already purchased $8,000 worth of materials to make improvements to the Cherryville Fire Department prior to this stop-work order.  (*Id.*).  This incident led Billy Lemaster to make a third Facebook post on March 15, 2020 which stated in full:

> Oh the holler hag Wilma McKenzie and Phil Twotter are at it again god love their black hearts [ ] maybe before assuming someone is doing something for pure pleasure maybe they should ask for answers from the horses mouth! I don't keep a fire engine parked outside for my own pleasure I park it there because it's the only safe place since we were lied to by the county Judge! After pissing him off talking about his one true love Wilma we were shafted on our building project! Now 8000$ dollars are lying on the floor and will not be moved out of fear of being accused of stealing yet again! Phil promised to help us fix up the place then proceeded to call the building inspector on us!

(Doc. # 44-2).

Plaintiffs also rely on the deposition testimony of Lawrence County dispatcher, Barbara Howard, for evidence of ongoing interference with the towing service call list. (Doc. # 44 at 5-6).  To reiterate, Plaintiffs' first Motion for Preliminary Injunction described

a conversation Billy Lemaster had with Dispatch in May of 2020 after Dispatch failed to call Lemaster Towing for a job.  (Doc. # 19-12).  Plaintiffs now identify that dispatcher as Ms. Howard, who testified in her deposition that she did not call Lemaster Towing because Judge Carter told her to stop calling them.  (Doc. # 43-1 at 15).  Ms. Howard stated that due to this directive from Judge Carter, she would push a button on the computer system to assign a tow truck, and if Lemaster was selected, she would not call Lemaster and would press the button again so that the job would be assigned to the next towing company on the rotation list.  (*Id.* at 16, 23-24).  Thus, according to Ms. Howard, while Lemaster may appear to have been assigned calls on the call log, she was not actually calling them for towing jobs.  (*Id.* at 19, 23-24).  Ms. Howard testified that Judge Carter directed her not to call Lemaster Towing as recently as approximately July of 2020—a couple of months prior to her deposition in September 2020.  (*Id.* at 21-22).

Plaintiffs once again seek an order "reinstating Lemaster Towing and Recovery on the tow call list maintained by Lawrence County E-911; enjoining Defendants Lawrence County and Philip L. Carter . . . and their employees, agents, and assigns, from interfering with Lemaster Towing and Recovery on the tow call list; and to administer the tow call list fairly in rotation in compliance with Lawrence County's Policies and Procedures[.]"  (Doc. # 44 at 10).

## II.   ANALYSIS

### A.   Standard of Review

"A preliminary injunction is an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo until trial."  *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 22

(2008)).  A party seeking preliminary injunctive relief must demonstrate the following four factors: (1) that there is a strong likelihood of success on the merits, (2) that the moving party will suffer irreparable injury absent an injunction, (3) that the balance of equities tips in the moving party's favor, and (4) that an injunction is in the public interest.  *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 923 (6th Cir. 2020) (citing *Winter*, 555 U.S. at 24); *see also Louisiana-Pacific Corp. v. James Hardie Bldg. Prods.*, 928 F.3d 514, 517 (6th Cir. 2019).  When there is *some* likelihood of success on the merits, courts should balance these factors rather than tally them.  *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).  Although no one factor is controlling, "a court must not issue a preliminary injunction where the movant presents no likelihood of merits success." *Louisiana-Pacific Corp.*, 928 F.3d at 517.

### 1.    Likelihood of Success on the Merits

In order to assert a prima facie First Amendment retaliation claim, Plaintiffs must show that "(1) [they] engaged in constitutionally protected conduct; (2) an adverse action was taken against [them] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by [the] protected conduct." *Boxill v. O'Grady*, 935 F.3d 510, 517-18 (6th Cir. 2019) (quoting *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012)).

As discussed in the Order denying Plaintiffs' first Motion for Preliminary Injunction, the First Amendment covers speech that may be "fairly characterized as constituting speech on a matter of public concern." *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 573 (6th Cir. 1997) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)); *see also Lucas v. Monroe Cnty.*, 203 F.3d 964, 973-74 (6th Cir. 2000).  Such

speech "involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 249 (6th Cir. 2007) (quoting *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004)).

To determine whether speech relates to a matter of public concern, courts examine "the content, form, and context of a given statement, as revealed by the whole record." *Mosholder v. Barnhardt*, 679 F.3d 443, 449-50 (6th Cir. 2012) (quoting *Connick*, 461 U.S. at 147-48). "[T]he pertinent question is not *why* the employee spoke, but *what* he said." *Id.* at 450 (quoting *Farhat*, 370 F.3d at 591). In other words, courts focus on "the distinction between matters of public concern and those only of private interest, 'not [between] civic-minded motives and self-serving motives.'" *Id.* (quoting *Chappel*, 131 F.3d at 575) (alteration in original). A communication need not be "utterly bereft of private observations or [ ] expressions of private interest" to be considered related to the public interest. *Id.* at 450-51. At the same time, a mere "passing" or "fleeting" reference to a public matter "do[es] not elevate the speech to a matter of 'public concern' where the 'focus' or 'point' of the speech advances only a private interest." *Farhat*, 370 F.3d at 592-93.

For purposes of their Renewed Motion for Preliminary Injunction, Plaintiffs rely on the August 29, 2019 and March 15, 2020 Facebook posts as alleged instances of protected speech. Defendants first argue that Plaintiffs have not demonstrated that the August 29, 2019 Facebook post, which stated, "Is Phillip L. Carter and Wilma McKenzie a couple now? Asking for a friend" constitutes protected speech. (Docs. # 46 at 4-6 and 44-1). The Court agrees.

8

Plaintiffs assert that the context surrounding this speech related to an issue of public concern. (Docs. # 44 at 2 and 48 at 2-3). Plaintiffs explain that Billy Lemaster made the post in response to a perceived "smear campaign" carried out by Judge Carter by way of Wilma McKenzie, who was allegedly spreading rumors that the Lemasters were misusing or stealing public funds and attempting to remove Billy Lemaster as fire chief. (*Id.*) (citing Doc. # 41-1 at 25). Yet, this background tends to show that Billy Lemaster perceived that Judge Carter was engaging in personal attacks against him, which motivated the Facebook post. Thus, the "focus" of the speech appears to have been the Lemasters' personal interest, as opposed to some larger public concern. *Farhat*, 370 F.3d at 593.

The content of the speech also supports this conclusion. The short statement, suggesting a relationship between Judge Carter and Wilma McKenzie, does not so much as mention the Fire Department or any perceived misconduct on the part of Judge Carter. *Id.* at 591 (remarking that the "pertinent question is not *why* the employee spoke, but *what* he said"). Further, Billy Lemaster stated in his deposition that he had no basis for believing Carter and McKenzie were in a relationship, or that such a relationship would be improper if, for example, McKenzie were a public employee, thereby insinuating some type of nepotism or bias. (*See* Doc. # 41-1 at 24-25). Thus, it is not likely that Plaintiffs will succeed on their First Amendment Retaliation claim based upon the August 2019 post.

With respect to Billy Lemaster's March 15, 2020 Facebook post, Defendants do not argue that this speech does not relate to a matter of public concern, but rather focus on the third step in the retaliation analysis by arguing that "there is no plausible nexus

between this post and any alleged retaliatory conduct by Judge Carter."  (Doc. # 46 at 7). Focusing on this third factor is wise, as it is likely Plaintiffs will be able to demonstrate that the March 15, 2020 Facebook post related to a matter of public concern and that Judge Carter took an adverse action against Plaintiffs.  Although the March post includes certain personal insults directed towards Judge Carter and Wilma McKenzie, the post also charges that Judge Carter, out of a desire for personal revenge against the Lemasters, called the building inspector to inspect the Cherryville Fire Department, which Plaintiffs explain resulted in a stop-work order on planned renovations to the Department.  (Docs. # 44-2 and 44 at 4).  The post also states that as a result of Judge Carter's actions, $8,000 worth of building materials that the Lemasters had purchased with County funds in order to renovate the Fire Department were being wasted.  (Doc. # 44-2).

Because this post draws attention to Judge Carter's alleged abuse of power, waste of public resources, and interference with repairs to the Cherryville Fire Department, the content of this message is more closely related to matters of public concern.  *See Chappel*, 131 F.3d at 576 (commenting that "public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law" "and when 'seeing that public funds are not purloined' or wasted") (quoting *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986)).  The Court need not determine at this stage whether the March 15th post constitutes protected speech but finds that for purposes of Plaintiffs' Renewed Motion for Preliminary Injunction, Plaintiffs have demonstrated a sufficient likelihood that it would be.

Plaintiffs have also demonstrated that they will likely be able to meet their burden on the second factor by showing that Judge Carter took an adverse action against them

that would deter a person of ordinary firmness from continuing to engage in further speech. *Boxill*, 935 F.3d at 518. This is because County dispatcher Barbara Howard testified in her deposition that Judge Carter told her not to call Lemaster Towing as part of the County service call list on multiple occasions. (Doc. # 43-3 at 21-22).

Thus, the Court, like Defendants, will focus its analysis on the third factor—whether the evidence at this stage shows a likelihood that Judge Carter's "adverse action was motivated at least in part" by the protected conduct—the March 15, 2020 Facebook post. *Boxill*, 935 F.3d at 518. The Sixth Circuit has noted recently that "[t]here is some uncertainty in our cases over whether a plaintiff must prove this [under a] but-for test or whether the plaintiff need only show that the protected conduct was a motivating factor[.]" *Anders v. Cuevas*, 984 F.3d 1166, 1177 (6th Cir. 2021) (quoting *Rudd v. City of Norton Shores*, 977 F.3d 503, 515 (6th Cir. 2020)). "A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation." *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 305 (6th Cir. 2012) (quoting *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010)). In certain circumstances, when the adverse action occurs "very close in time" to the protected conduct, temporal proximity may, by itself, be enough for a prima facie showing of causation. *Id.* at 305-06 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). For example, in *Dye*, the court found a lapse of two months to be sufficient to show causation. *Id.* at 306 (collecting cases).

Here, Plaintiffs attempt to demonstrate causation by highlighting the temporal proximity between Billy Lemaster's March 15, 2020 Facebook post and the incident on

11

May 2, 2020 when the Lemasters overheard Dispatch skipping over Lemaster Towing on the rotation list.[2]  (Doc. # 44 at 8).  However, the timeline of events does not present a straight-forward, causal connection between the March 15th post and an adverse action. More specifically, County Dispatcher, Barbara Howard, testified that Judge Carter had told her "months" before the May 2nd incident to stop calling Lemaster Towing.  (Doc. # 43-1 at 15).  Thus, it is not clear how soon after the March 15th Facebook post Judge Carter told Dispatch not to call Lemaster Towing, and based on Ms. Howard's testimony, it is possible Judge Carter ordered Dispatch not to call the Lemasters at some point *before* the March Facebook post.

Ms. Howard elaborated that beginning with the September 2019 email removing Lemaster Towing from the service call list, "[i]t went back and forth," meaning that her supervisor, Tim Ellis, would tell her to call Lemaster Towing as part of the rotation list and then Judge Carter would contradict him, telling her to stop calling Lemaster.  (*Id*. at 15-18).  For example, following the May 2nd incident, Judge Carter told Ms. Howard to resume calling Lemaster Towing, but then told her once again to stop calling Lemaster

---

[2]     Plaintiffs' causation argument relies primarily on the August 2019 Facebook post suggesting a relationship between Judge Carter and Wilma McKenzie, (Doc. # 44 at 8), which was made less than a week before the September 3, 2019 email informing Dispatch that Lemaster Towing was no longer on the rotation list.  Although a gap of four or five days would certainly indicate retaliatory motive, as discussed at length above, Plaintiffs have not adequately demonstrated that the August 2019 Facebook post constituted protected speech.

In their reply brief, Plaintiffs also attempt to re-argue causation with respect to the April 15, 2019 post concerning the firing of a County employee.  (Doc. # 48 at 4).  However, the new evidence Plaintiffs present in their Renewed Motion for Preliminary Injunction does not resolve the causation issues identified in the Court's prior Order with respect to the April post, including the gap in time between the speech and adverse action in September 2019 as well as the intervening uptick in business.  Moreover, based on Billy Lemaster's and Judge Carter's deposition testimony, it is less apparent now that the April 2019 post addressed a matter of public concern.  (*See* Docs. # 41-1 at 22 and 42-2 at 48-49) (explaining that the post merely called for a recently-fired employee to be brought back or criticized the job the new employee was doing without mentioning anything to do with the misuse of public funds, as was previously suggested).

Towing in approximately July of 2020.  (*Id.* at 21-22).  Measuring from the March 15, 2020 Facebook post to the most recent identified occasion Judge Carter directed Dispatch to stop calling Lemaster Towing, in July 2020, presents a four-month gap between the protected conduct and alleged adverse action.  This degree of temporal proximity, on its own, does not adequately demonstrate causation.  *See, e.g.*, *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (finding delay of four months insufficient to support an inference of retaliation).

Based on the lack of clarity in the timeline, Plaintiffs cannot rely on temporal proximity alone to make out their prima facie case of retaliatory motive.  This is particularly so given the "stringent" proof required to secure a preliminary injunction, an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it."  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (quoting *Direx Israel, Ltd v. Breakthrough Med. Corp.*, 952 F.2d 802, 811(4th Cir. 1991)).

Furthermore, as with Plaintiffs' first Motion for Preliminary Injunction, the surrounding circumstances considered together with temporal proximity do not provide a sufficient indicia of retaliatory motive.  It is apparent that Judge Carter's alleged retaliatory conduct began long before the March 15, 2020 Facebook post—starting with the email directing Dispatch to remove Lemaster Towing from the service call list in September 2019.  (Doc. # 19-5).  Plaintiffs now also allege that Judge Carter took several other adverse actions against them leading up to the March 15, 2020 post, including accusing them of stealing public funds during the summer of 2019, starting a petition to remove Billy Lemaster as head of the Cherryville Fire Department, and calling the building

13

inspector on the Department, among other things.  (*See* Doc. # 44 at 2-4).  Where the retaliatory action begins prior to the protected conduct or there is evidence of a personal dispute that predates the protected conduct, causation is more difficult to prove.  *See Meyers v. City of Cincinnati*, 934 F.2d 726, 729 (6th Cir. 1991) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).  In fact, Billy Lemaster commented in his deposition that in his opinion, it was the August 2019 post insinuating, sarcastically, a relationship between Judge Carter and Wilma McKenzie that "was the main factor that put it over the edge" and led Judge Carter to remove Lemaster Towing from the call list. (Doc. # 41-1 at 34).  In sum, Plaintiffs have not put forth sufficient evidence that Judge Carter took an adverse action, even in part, due to the March 15, 2020 Facebook post. This finding does not preclude Plaintiffs from demonstrating as much at a later point in the litigation.  However, at this time, Plaintiff have not demonstrated a strong likelihood of success on the merits of their First Amendment retaliation claim.

### 2.    *Remaining Winter Factors*

As Plaintiffs have shown *some* likelihood of success on the merits, the Court will proceed to balance that likelihood of success along with the remaining *Winter* factors: whether Plaintiffs will likely suffer irreparable harm absent an injunction, whether the balance in equities tips in Plaintiffs' favor, and whether an injunction would be in the public interest.  *Adams & Boyle, P.C.*, 956 F.3d at 923 (citing *Winter*, 555 U.S. at 24).

With respect to irreparable injury, Plaintiffs once again argue that they continue to receive fewer calls by operation of the towing service call list.  (Doc. # 44 at 9).  This is supported by dispatcher—Barbara Howard's—testimony that in the past, pursuant to Judge Carter's directives, she would skip Lemaster Towing on the rotation list.  (Doc. #

43-1 at 10, 14-15).  Ms. Howard also testified that this would not necessarily be reflected

in the towing records, which may show towing jobs that were *assigned* by the computer

system to Lemaster Towing without reflecting the fact that she did not actually call

Lemaster.  (*Id.* at 23-24).  At the same time, Ms. Howard testified that as of her deposition

in September 2020, she has been calling Lemaster Towing when they are assigned a job

and had been doing so for the past couple of months.  (*Id.* at 23).  In addition, Plaintiffs

have not provided evidence of Judge Carter's speaking with other dispatchers, nor do

they attempt to quantify how much their business from the rotation list has decreased.

More importantly, because Plaintiffs have once again failed to tie Judge Carter's alleged

adverse action to protected conduct, they have not demonstrated that it is likely Judge

Carter would retaliate against them for future protected conduct.  (*See* Doc. # 36 at 15)

(citing *Horn-Brichetto v. Smith*, No. 3:17-cv-163, 2019 WL 921454, at *22 (E.D. Tenn.

Feb. 25, 2019); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,

274 F.3d 377, 400 (6th Cir. 2001); *Winter*, 555 U.S. at 8).  Although Plaintiffs have

presented more concrete evidence of Judge Carter's past adverse actions, the Court is

concerned only with those actions taken, as least in part, in response to protected conduct

and the possibility of future similar harm.  Accordingly, Plaintiffs continue to fall short of

demonstrating that future irreparable injury is likely absent an injunction.

     The Court's analysis regarding the remaining two *Winter* factors remains largely

unchanged.  As previously noted, in terms of the balance of equities, an injunction in this

case would protect Plaintiffs' First Amendment rights by safeguarding against future

retaliation, while merely asking Defendants to operate the towing rotation list fairly and in

accordance with County policies—not a burdensome demand.  In addition, it is generally

in the public interest to safeguard a party's constitutional rights.  *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).  Weighing each of the above factors, the Court reaches the same conclusion here as with Plaintiffs' first Motion for Preliminary Injunction.  While the latter two factors weigh in Plaintiffs' favor, the Court cannot overlook Plaintiffs' continued failure to demonstrate the two most important factors: a strong likelihood of success on the merits and a likelihood of irreparable injury. *Nken v. Holder*, 556 U.S. 418, 425-26, 433-34 (2009); *see also Mich. State A. Philip Randolph Inst. v. Johnson*, 749 F. App'x 342, 344 (6th Cir. 2018).  Thus, a preliminary injunction is not warranted.

## III.    CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** that Plaintiffs' Renewed Motion for Preliminary Injunction (Doc. # 44) is **DENIED**.

This 12th day of March, 2021.

Signed By:

*David L. Bunning*   *DB*

United States District Judge

J:\DATA\ORDERS\Ashland Civil\2020\20-12 MOO Renewed PI.docx